UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Travis Widner,

           Plaintiff,

vs.

City of Anoka d/b/a
Better Value Liquor,

           Defendant.

Case No.:

**COMPLAINT**

_____

Plaintiff, by and through his undersigned counsel, bring this action against City of Anoka d/b/a Better Value Liquor for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and allege as follows:

## INTRODUCTION

1.  This case concerns Defendant's federal statutory obligation to ensure its facility becomes, and remains, compliant with the ADA. Accordingly, Plaintiff seeks: 1) remediation of the unlawful architectural barriers described below; and 2) modification of Defendant's ADA related policies, procedures, and practices in order to ensure that the facility remains ADA compliant. Plaintiff also seeks his reasonable attorneys' fees, litigation expenses, and costs, and such other relief as is deemed just and proper, and/or is allowable under Title II of the ADA.

1

2. Notwithstanding the fact that the ADA was enacted more than twenty-five years ago, Defendant has failed to follow the ADA's mandatory requirements that are calculated to ensure that Defendant's parking lot and interior of the store is accessible to individuals with disabilities.

3. Plaintiff alleges violations of Title II of the ADA and its implementing regulations.

## TITLE II OF THE ADA

4. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

5. The ADA broadly protects the rights of individuals with disabilities with respect to employment, access to State and local government programs, places of public accommodation, transportation, and other important areas of American life.

6. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

7. The federal regulations implementing Title II of the ADA prohibit public entities from denying qualified individuals with disabilities the opportunity to benefit from services of the entity, or from using criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130.

8. The federal regulations also provide that a "public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Id*. at § 35.130(b)(7).

9. Defendant is a public entity under Title II of the ADA and its implementing regulations.

10. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title II of the ADA, which are codified at 28 CFR Part 35.101 et seq.

11. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA Standards for Accessible Design ("1991 Standards"), which were based upon the Americans with Disabilities Act Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date.[1] The 1991 Standards were made binding on Title II entities by 28 CFR § 35.151(c).

---

[1] The Access Board was established by section 502 of the Rehabilitation Act of 1973. 29 U.S.C.§792. The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation. Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968. 42 U.S.C. § 4151 et seq. The passage of the ADA expanded the Access Board's responsibilities. The ADA requires the Access Board to "issue minimum guidelines. . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities." 42 U.S.C. § 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to Title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations. The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to Title III.

12. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

13. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ADA Accessibility Guidelines.

14. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

15. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

16. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title II of the ADA.

17. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in 28 CFR parts 35.151 and 28 CFR 36.401.[2]

---

[2] Part 28 CFR 36.401 applies only to entities covered by title III called "public accommodations" (i.e., privately-owned facilities that are open to the public), and is thus not relevant to this action.

18. Facilities and elements constructed or altered by public entities after March 15, 2012 are required to comply with the 2010 Standards.

## JURISDICTION AND VENUE

20. This Court has federal question jurisdiction over the ADA claims asserted 1herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

21. Venue in this judicial district is proper under 28 U.S.C. § 1391 because this is the judicial district in which Defendant is located, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

22. Defendant City of Anoka ("Defendant") is responsible for assuring that its policies and facilities are operated in compliance with federal law. Defendant is the single city entity with responsibility to manage its City-owned liquor store. Defendant is sued for actions and omissions under color of federal law.

23. Since the Enactment of the ADA in 1991, public entities have been prohibited from discriminating against otherwise qualified individuals by excluding them from the enjoyment of the entity's programs solely due to their disability. 42 U.S.C. § 12132.

24. Program accessibility includes accessible facilities and elements.

## PARTIES

25. Plaintiff Travis Widner ("Widner") is a below-the-knee amputee as a result of a severe automobile accident he was involved in 2017. He has a fused pelvis and partial paralysis in his remaining foot due to nerve damage from the accident. Because he has a

skin graft at the site of his amputation, the use of his prosthesis can cause extreme irritation on his residual limb. Widner is dependent upon, and alternates between, the use of a prosthesis, crutches, a walker, a knee scooter and a wheelchair depending on how he is feeling. Mr. Widner suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). He is therefore a member of the protected class under the ADA and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et. seq.*

26. Mr. Widner has an acute understanding of the discrimination people with disabilities regularly encounter when businesses ignore the ADA - and the humiliation, embarrassment, stigma, physical discomfort, stress, strain, fatigue and isolation from friends and family that results. Mr. Widner is also well-aware of the benefits for the disabled when responsible business owners take the ADA's requirements seriously. Mr. Widner is very much committed to doing all that he can to help himself, and other disabled people, by pursuing a cause - holding businesses accountable for ignoring the ADA - that others may turn away from.

27. Travis Widner, age 39, resides in Minnesota. He regularly frequents businesses in the Twin Cities Metropolitan and surrounding area (Area) including restaurants, convenience stores, liquor stores, grocery stores and other businesses - and has done so for years and years. The ability to independently patronize businesses in the Area is important to Mr. Widner and his quality of life; it enables him to obtain necessary goods

and services and allows him to interact with the community, which is a critical social outlet for him.

28. Compliance with Title II is critical for the disabled community. If, for example, a toilet is not accessible with adequate maneuvering space, grab bars, etc. the disabled either cannot toilet, or cannot do so without assistance. Disabled individuals have been forced to urinate and defecate on themselves because a place of public accommodation did not have an accessible toilet. Similarly, without a properly striped parking lot including accessible parking and an accompanying access isle, disabled individuals face the threat that another may park so close to the vehicle he or she is travelling in that he or she will be unable to access that vehicle until the car parked beside it is moved, or without excessive struggle and risk of injury. Improper slopes at parking spaces and access aisles can result in a wheelchair rolling away from a disabled individual while transitioning from their vehicle and cause risk of injury. Improper slopes along access routes and sidewalks can make access difficult, taxing, cause physical discomfort, and puts the disabled individual at risk for injury. And without an accessible entrance, disabled individuals are excluded from independent access to the premises entirely.

29. Defendant City of Anoka d/b/a Better Value Liquor ("Defendant") owns and/or operates Better Value Liquor and owns the real property upon which Better Value Liquor is located at 809 West Hwy 10, Anoka, MN, a place of public accommodation within the meaning of the ADA.

## ARCHITECTURAL BARRIERS

30. Within the applicable limitations period, Mr. Widner patronized Better Value Liquor, encountered and was subjected to discriminatory barriers which hindered and/or precluded his ability to patronize the business. Unlawful barriers at the business include, but are not necessarily limited to, the following:

    a.    a portion of the disabled accessible parking space(s) and/or access aisles(s) is steeper than 1:48 (2%) in violation of the 2010 ADA Standards 502.4;

    b.    impermissible vertical changes in level greater than 1/4 inch accessing the entrance to the Premises, in violation of the 2010 ADA Standards 404.2.5, 303 and 303.2;

    c.    the ramp has a rise higher than 6 inches and there are not handrails on both sides, in violation of the 2010 ADA Standards 405.8;

    d.    the ramp changes direction between runs and does not have a landing that is 60 inches minimum by 60 inches minimum in violation of the 2010 ADA Standards 405.7.4; and

    e.    the ramp landing has a slope greater than 1:48 (2%), in violation of the 2010 ADA Standards 405.7.1.

## CAUSE OF ACTION

31. The allegations contained in the previous paragraphs are incorporated by reference.

32. Defendant has discriminated against Plaintiff in that it has failed to make its parking lot, and pathways fully accessible to, and independently usable by, individuals with limited mobility, in violation of the ADA, as described above.

33. Providing an accessible parking lot and eliminating tripping hazards would neither fundamentally alter the nature of Defendant's services nor result in an undue burden to Defendant.

34. Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public entities make programs equally accessible to people with disabilities, Plaintiff invokes his statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

35. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its programs be fully accessible to people with limited mobility is likely to recur.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title II of the ADA described above;

b. A permanent injunction which directs Defendant to take all steps necessary to bring Better Value Liquor into full compliance with the requirements set forth in the

ADA and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that Better Value Liquor is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

    d.    Payment of costs of suit;

    e.    Payment of reasonable attorneys' fees; and,

    f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: March 22, 2021                    **THRONDSET MICHENFELDER, LLC**

                                                By: _/s/Patrick W. Michenfelder_____
                                                Patrick W. Michenfelder (#024207X)
                                                Chad A. Throndset (#0261191)
                                                Cornerstone Building
                                                One Central Avenue West, Suite 101
                                                St. Michael, MN 55376
                                                Tel: (763) 515-6110
                                                Fax: (763) 226-2515
                                                Email: chad@throndsetlaw.com
                                                Email: pat@throndsetlaw.com
                                                *Attorneys for Plaintiff*

     The undersigned hereby acknowledges that costs, disbursement, and reasonable attorney fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.221.

                                                _/s/Patrick W. Michenfelder_____
                                                Patrick W. Michenfelder (#024207X)